# THE QUODDY.

(District Court, D. Massachusetts.  March 31, 1923.)

## No. 2137.

**Salvage ⊚⇒34—$175 awarded for towing disabled fishing vessel to port.**

Where a fishing vessel, which, with her cargo and nets, was valued at about $4,400, was disabled by the breaking of her shaft and unable to reach port under sail at the time because of unfavorable winds, but was not in danger of sinking, service rendered by another fishing vessel in towing her into port, which occupied about 10 hours' time, involved no danger, and was not shown to have caused loss by delay in getting the cargo of the other vessel to market, or by delay in a subsequent voyage, is salvage service of a low order, for which $175 is sufficient award.

In Admiralty.  Libel by George Hill and others against the steam screw Quoddy for salvage.  Decree rendered for libelants.

John J. Burke, of Boston, Mass., for libelant.

Albert T. Gould and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., for respondent.

PETERS, District Judge.  This is a claim of salvage.  It appears that the steam screw Quoddy, on the afternoon of October 20, 1921, was returning to Gloucester with a trip of fresh fish from the fishing grounds southeast of the Isles of Shoals, when her tail shaft broke and the engine became useless.

The master of the Quoddy made an attempt to set sail and make his way back to Isles of Shoals, but without success, as the wind was unfavorable.  About this time the vessel sprang a leak, which was kept under control with the pumps.  This occurred about 18 miles northeast of Annisquam.

The steam screw Robert and Edward, owned by Henry E. Pinkham Company, George Hill, master, also bound for Gloucester with a trip of fish, being in the vicinity, at about 2 o'clock p. m., came to the assistance of the Quoddy, and at the request of her master made fast to her with hawsers and took her in tow for Gloucester, where they arrived that night a little after midnight.

The engineer was not able to repair the damage to the machinery of the Quoddy before arrival in port.  She could not have made port that day or night under such sail as she had.  Probably she would have been blown off shore until the wind changed or other assistance arrived, had not the Robert and Edward come to her rescue.  She was not in any particular danger of sinking, however, nor was there apprehension of such a catastrophe.

It is agreed that, for the purposes of this case, the value of the Quoddy was $4,000, the value of her catch of fish on board $184, and her nets about $250.  No claim was made for loss of market or depreciation in value of the fish on board the Robert and Edward, resulting from delay in reaching port on account of the salvage service, and no claim was made that she was consequently delayed in going out on her next

trip. The captain testifies that he and his crew were considerably exhausted by the labor in getting the Quoddy into port.

This is a salvage service of a rather low order. The risk, labor, and time involved were inconsiderable, but, on the other hand, the disabled vessel might have been blown off to sea, and subjected to the danger of further disaster, if she had not been taken in tow by the libelants.

Taking into consideration all the elements of the case, I make an award of $175 of which $100 is to go to the vessel, and $75 to the master and crew, to be divided in proportion to their monthly wages.